# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# NORTHERN DIVISION

ROBERT GEORGE DUNN,

     Plaintiff,                       CASE NO. 04-CV-10013-BC

v.                                     DISTRICT JUDGE DAVID M. LAWSON
                                     MAGISTRATE JUDGE CHARLES BINDER

JOHN E. POTTER, POSTMASTER
GENERAL, UNITED STATES
POSTAL SERVICE,

     Defendant.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
## ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(Dkt. 28)

## I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendant's Motion for

Summary Judgment be **GRANTED**.

## II.    REPORT

### A.    Introduction

By order of United States District Judge David Lawson, this employment discrimination

case was referred to the undersigned Magistrate Judge for pretrial case management. (Dkt. 3.) On

March 11, 2005, Defendant filed the motion for summary judgment that is now before the Court,

and Plaintiff submitted his response on April 19, 2005. (Dkt. 32.) No reply was received, and the

parties requested that the motion be decided without oral argument.  (Dkt. 30.)  Accordingly, the motion is ready for Report and Recommendation.

### B.    Motion Standards

A motion for summary judgment will be granted under Rule 56(c) where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  All facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).  The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).  In determining whether the moving party has met its considerable burden, a court may consider the plausibility of the moving party's evidence. *Matsushita*, 475 U.S. at 587-88.  Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof. *Celotex*, 477 U.S. at 326.

In response, the non-moving party cannot rest merely on the pleadings alone. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 191 L. Ed. 2d 202 (1986).  Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993).  When the non-moving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80.  Instead, the court will rely upon the "facts presented and designated by the moving party." *Guarino v. Brookfield*

2

*Township Trustees*, 980 F.2d 399, 404 (6th Cir. 1992). The Sixth Circuit explicitly instructs that it is "utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion." *Id.* at 406.

After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

### C.   Background

Plaintiff Robert Dunn is a 50-year-old white male who has been employed by the United States Postal Service ("USPS") for more than twenty years. (Amended Compl., Dkt. 17 ¶ 7.) He has resided in Alger, Michigan, for his entire life, with the exception of five years when he served in the U.S. Army.

For five of the seven years prior to September 2001, Plaintiff held the position of Officer in Charge ("OIC"), or "Temporary Postmaster," of the Alger post office. (Am. Compl. ¶ 9.) On September 4, 2001, the position of permanent postmaster for the Alger post office became available. Because the current OIC is not eligible to apply for the position of postmaster at the same location, Plaintiff took a position as a rural carrier prior to submitting his application. The job posting closed on September 19, 2001. Plaintiff was never interviewed for the permanent postmaster position, and neither were any other applicants because on September 25, 2001, Victor Diaz was assigned the position of Alger Postmaster in settlement of a discrimination claim he had

brought against the United States Postal Service.  (*See* Diaz Settlement Agreement, Dkt. 28 at Ex. B.)  Mr. Diaz at that time was a 35-year-old Hispanic male with no prior experience or training as a postmaster or as an officer in charge of a post office.  Plaintiff asserts that when Diaz arrived in Alger to begin his new position, Plaintiff and others were required to train and educate him with regard to his job responsibilities.

Count I of Plaintiff's First Amended Complaint alleges that the appointment of Mr. Diaz to postmaster in settlement of his discrimination claim constituted prohibited reverse discrimination against Plaintiff Dunn on the basis of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.  Plaintiff asserts that, "[n]otwithstanding Plaintiff's performance, training, and experience with Defendant, he was not permitted to become, or even to interview for the position of Postmaster of Alger due to Mr. Diaz'[s] Hispanic status . . . ."  (Am. Compl. ¶ 28.)

Count IV[1] alleges that Plaintiff was denied his opportunity to compete for the position of Alger Postmaster in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623 *et seq.*, because a less-qualified 35-year-old was given the job.  Plaintiff asserts that Defendant's discriminatory actions caused Plaintiff to suffer economic loss, mental anguish, stress, humiliation and embarrassment.  (Am. Compl. ¶¶ 29 & 39.)

Defendant moves for summary judgment on two grounds.  First, Defendant asserts that Plaintiff has failed to make out a prima facie case of discrimination under either Title VII or the ADEA because there was no adverse action in this case.  Defendant asserts that since the open position was offered to Mr. Diaz before any of the applications were considered, there was never a decision made to choose Diaz over Plaintiff.  Instead, the posted opening was in effect rescinded

---

[1]Counts II, III and V were dismissed by stipulation on November 22, 2004.  (Dkt. 25.)

4

when the labor negotiator representing the USPS in Diaz's settlement talks, who had no idea whether anyone had applied for the opening, settled the Diaz case by offering Diaz the position of Alger Postmaster, which Diaz accepted. Second, Defendant asserts that even if Plaintiff could make out a prima facie case, Defendant has asserted a legitimate nondiscriminatory reason for why Plaintiff did not get the promotion to Alger Postmaster, and Plaintiff has failed to come forward with any evidence to show that the reason is a mere pretext for prohibited discrimination on the basis of age or race.

### D.    Analysis & Conclusions

### 1.    Governing Standards in Discrimination Claims

In order to establish employment discrimination, a plaintiff must either present direct evidence of discrimination or introduce circumstantial evidence that would allow an inference of discriminatory treatment. *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (en banc). In this case, Plaintiff does not argue that there is direct evidence of discrimination. (*See* Pl.'s Resp., Dkt. 32.) In evaluating claims based upon circumstantial evidence, federal courts employ the burden-shifting approach first announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). *See also Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981); *Vaughn v. Watkins Motor Lines, Inc.*, 291 F.3d 900, 906 (6th Cir. 2002).

In the first step of the burden-shifting approach to discrimination claims, the plaintiff carries the burden of establishing by a preponderance of the evidence a prima facie case of discrimination by the employer. The plaintiff who successfully establishes a prima facie case receives the benefit of a presumption that the employer unlawfully discriminated against him or her. *Burdine*, 450 U.S. at 254. The burden then "shifts to the defendant 'to articulate some legitimate, nondiscriminatory

5

reason for the employee's rejection.'" *Id.* at 253 (quoting *McDonnell Douglas*, 411 U.S. at 802). Finally, "should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* Throughout this burden-shifting framework applicable when circumstantial evidence is involved, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id. See also Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1246 (6th Cir. 1995).

Plaintiff's claims of racial discrimination under Title VII and age discrimination under the ADEA are subject to these same standards of proof and therefore need not be analyzed separately. *See Anthony v. BTR Automotive Sealing Systems, Inc.*, 339 F.3d 506 (6th Cir. 2003); *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 464 (6th Cir. 2001).

### 2.    Discussion

The Sixth Circuit recently set forth the required elements of a prima facie failure-to-promote claim:

> To establish a prima facie discrimination claim, a plaintiff must show: (1) that he is a member of a protected class; (2) that he applied and was qualified for a promotion; (3) that he was considered for and denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class received promotions. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); *Sutherland v. Michigan Dept. of Treasury*, 344 F.3d 603, 614 (6th Cir. 2003) (citation omitted).

*Leadbetter v. Gilley*, 385 F.3d 683, 690 (6th Cir. 2004). In this case, with regard only to Plaintiff's racial discrimination claim, Plaintiff is in the majority and therefore two of these elements are somewhat altered. The *Leadbetter* court explained the changes:

6

The Sixth Circuit has adapted this four-prong test to cases of reverse discrimination, where a member of the majority is claiming discrimination. *Sutherland*, 344 F.3d at 614-15 (6th Cir. 2003); *Pierce v. Commonwealth Life Ins.*, 40 F.3d 796, 801 (6th Cir. 1994). In such cases, a plaintiff satisfies the first prong of the prima facie case by "demonstrat[ing] 'background circumstances [to] support the suspicion that the defendant is that unusual employer who discriminates against the majority.'" *Id.* (citations omitted). To satisfy the fourth prong in a reverse-discrimination case, the plaintiff must show that the defendant treated differently employees who were similarly situated but were not members of the protected class. *Id.*

*Leadbetter*, 385 F.3d at 690.

In this case, Defendant focuses its argument for summary judgment on the third prong of the prima facie case, which I note is the same for both Plaintiff's race and age claims. The third prong of the prima facie case requires Plaintiff to demonstrate that he was "considered for and denied the promotion." *Id.*[2] This prong is sometimes known as the "adverse action" prong. Defendant asserts that the undisputed evidence establishes that Plaintiff was never considered for the promotion, because the Diaz settlement preempted the hiring process before any of the applicants were considered. Thus, according to Defendant, there was no decision that amounted to an adverse action taken against Plaintiff. (Def.'s Br. in Supp., Dkt. 28 at 6.) In support of this argument, Defendant points to the deposition testimony of Dennis Drotar, the Postal Service Labor Relations Specialist who represented the USPS in the settlement negotiations with Mr. Diaz. Mr. Drotar testified that

> Mr. Dunn wasn't part of any of the considerations that were made in awarding – or offering to Mr. Diaz, Alger as the postmaster. I was unaware that there were two

---

[2]In certain cases, the second and third prongs drop out of the prima facie case. In *Dews v. A.B. Dick Co.*, 231 F.3d 1016 (6th Cir. 2000), the Sixth Circuit held that, in the context of a Title VII failure-to-promote case, "a plaintiff does not have to establish that he applied for and was considered for the promotion when the employer does not notify its employees of the available promotion or does not provide a formal mechanism for expressing interest in the promotion." *Id.* at 1022. Here, all employees were notified that the position was available, and all applicants were treated the same – their applications were disregarded when the position was offered to and accepted by Diaz in settlement of his discrimination claim. Thus, *Dews* does not apply in this case.

7

people that had expressed [interest] in the Alger position or 22 people that expressed interest.  This was a vacancy that was on the books.

(Drotar Dep., Dkt. 28, Ex. C at 25-26.)  Mr. Drotar further testified that his only motivation in offering the Alger postmaster position to Mr. Diaz was to "avoid an unnecessary dispute in the courts from an employee who felt that they had been wronged."  (Dkt. 28 at 4.)

Plaintiff does not counter this evidence with any evidence of his own.  In fact, Plaintiff points to the deposition testimony of Robert Harris – whose job it was to post the position, review the applications, set up a review committee if necessary, and recommend an applicant – where he testified that he did not know how many applications were received for the Alger Postmaster position because the position was "pulled" before he even received the "vacancy package."  (Dkt. 32 at 7.)  Plaintiff instead focuses on the fact that the decision to offer Diaz the Alger postmaster position in settlement of his claim, coupled with Diaz's decision to accept that offer, impacted Plaintiff in the same way as if he had been considered and rejected for the position.  While this may be true, the third prong of the test is not merely whether an employee did not receive a promotion, but also whether he was actually considered for the position.  *See Dews*, 231 F.3d at 1020; *Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1095 (6th Cir. 1996).  Here, where Defendant has submitted record evidence to demonstrate that Plaintiff was never considered for the Alger postmaster position and Plaintiff has not responded with "significant probative evidence" to the contrary which would place this material fact in dispute, *Moore*, 8 F.3d at 339, I suggest that summary judgment for Defendant is warranted.

Defendant alternatively asserts that even if Plaintiff could make out a prima facie case, Defendant has set forth a legitimate nondiscriminatory reason explaining why Plaintiff did not get the promotion to Alger Postmaster – the settlement of the Diaz claim – and Plaintiff has failed to

come forward with any evidence to show that this reason is a mere pretext for prohibited discrimination on the basis of age or race.

A plaintiff can demonstrate pretext by showing by a preponderance of the evidence that the proffered reason either (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct. *Manzer v. Diamond Shamrock Chems. Co*., 29 F.3d 1078, 1084 (6th Cir. 1994). Plaintiff in this case attempts to go the second route. Plaintiff argues that the settlement of the Diaz discrimination claim could not have been the actual motivation for assigning the position to Mr. Diaz because Diaz was not as qualified for the position as Plaintiff (Diaz had no prior window experience), and because Drotar offered to fix Diaz's pay one level higher than the posted rate "so that Mr. Diaz would not lose any money." (Dkt. 32 at 16.)

In essence, Plaintiff is asserting that Defendant's attempt to remedy past discrimination against Diaz by assigning him the postmaster position had the domino effect of infringing upon Plaintiff's right to not be discriminated against. The U.S. Court of Appeals for the Tenth Circuit addressed this very issue in a discrimination case against the United States Postal Service, and relied upon Supreme Court and Sixth Circuit precedent to arrive at its conclusion:

> Title VII contains a strong preference for voluntary settlement of employment discrimination claims. *Carson v. American Brands, Inc*., 450 U.S. 79, 88 n.14, 101 S. Ct. 993, 998-99 n.14, 67 L. Ed. 2d 59 (1981). Appellant asserts that such settlements may not abridge the rights of other employees. However, "relief under Title VII cannot be denied simply because the interests of some employees will be negatively affected; otherwise, 'there will be little hope of correcting the wrongs to which the Act is directed.'" *EEOC v. International Longshoremen's Ass'n*, 623 F.2d 1054, 1060 (5th Cir. 1980), *cert. denied*, 451 U.S. 917, 101 S. Ct. 1997, 68 L. Ed. 2d 310 (1981) (quoting *Franks v. Bowman Transportation Co., Inc*., 424 U.S. 747, 775, 96 S. Ct. 1251, 1269, 47 L. Ed. 2d 444 (1976)). The Court in *Franks* noted that conflicting interests always will be present in cases such as this, but that such interests should not be allowed to frustrate the central "make whole" objective of Title VII. *Franks*, 424 U.S. at 774, 96 S. Ct. at 1269. Finally, the Court quoted

9

*Vogler v. McCarty, Inc.*, 451 F.2d 1236, 1238-39 (5th Cir. 1971), for the proposition that the courts "must be free to deal equitably with conflicting interests of . . . employees in order to shape remedies that will most effectively protect and redress the rights of the . . . victims of discrimination." *Franks*, 424 U.S. at 775 n.35, 96 S. Ct. at 1269 n.35.

> We agree with the Sixth Circuit's application of these principles to conciliation agreements in *EEOC v. McCall Printing Corp.*, 633 F.2d 1232, 1237-38 (6th Cir. 1980). Conciliation agreements which settle Title VII claims may not be considered independent acts of discrimination [against those not benefited by the agreement], as a matter of law, unless there are allegations of bad faith in making the agreement, that is, allegations that the agreement was not a bona fide attempt to conciliate a claim but rather an attempt to bestow unequal employment benefits under the guise of remedying discrimination. Our review of the record reveals no evidence which would tend to support an allegation of bad faith in the settlement of the Nix claim. To allow a settlement such as this to be considered an independent act of discrimination would "spark new rounds of litigation, settlement of claims would be discouraged," *McCall Printing Corp.*, 633 F.2d at 1238, and an employer would face suit by one group of employees if it fails to correct past discrimination, while facing suit by another group of employees if it does correct the past discrimination. *Dennison v. City of Los Angeles Dept. of Water and Power*, 658 F.2d 694, 696 (9th Cir. 1981).

*Carey v. U.S. Postal Service*, 812 F.2d 621, 624-25 (10th Cir. 1987).

I suggest that this analysis applies to the instant case. There is nothing in the record to suggest that the Diaz settlement agreement was entered into in bad faith and was not a bona fide attempt to remedy past discrimination against Diaz. To now allow Plaintiff Dunn to point to the terms of the settlement agreement and claim that those terms are discriminatory with regard to him ignores the reality that the reason Plaintiff was not considered for the job of postmaster was not because Diaz is Hispanic and Plaintiff is Caucasian, or because Diaz was under 40 and Plaintiff over 40, but because Diaz had brought an arguably meritorious discrimination claim that Defendant sought to remedy. Accordingly, I suggest that Plaintiff has failed to show that Defendant's legitimate non-discriminatory reason for assigning the position to Diaz was a pretext

for discrimination against him on the basis of his race or age, and therefore I further suggest that Defendant's motion for summary judgment be granted.

## III.   <u>REVIEW</u>

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.


 s/ *Charles E. Binder*
CHARLES E. BINDER
Dated: October 5, 2005                    United States Magistrate Judge


## <u>CERTIFICATION</u>

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Robert T. Grueneberg, and served in the traditional manner on Robert Dunn, Thomas C. Wimsatt and Honorable David M. Lawson.


Dated:  October 5, 2005                    By_____s/Mary E. Dobbick_____
                                          Secretary to Magistrate Judge Binder